## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MARINDA HAHN,                       :

                  Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                 Defendant.     :

Case No. 3:10-cv-109

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury.

*Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment

2

or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on April 18, 2005, alleging disability from September 22, 2004, due to low back, hip, and leg pain. (Tr. 60-77; 87). The Commissioner denied Plaintiff's application at the initial and reconsideration levels. (Tr. 40-42; 47-49). Administrative Law Judge Melvin Padilla held a hearing, (Tr. 584-625), and subsequently determined that Plaintiff is not disabled. (Tr. 18-31). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that she has severe lumbar degenerative disc disease with residuals of surgery and narcotic pain medication addiction/dependence, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 21, ¶ 3; Tr. 24, ¶ 4). Judge Padilla then found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. *Id.,* ¶ 5. Judge Padilla then used sections 202.21 and 201.22 of the Grid as a framework for deciding, coupled with a

3

vocational expert's (VE) testimony, and determined that there is a significant number of jobs in the economy that Plaintiff is capable of performing.  (Tr. 30, ¶ 10).  Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act.  (Tr. 31).

In her Statement of Errors, Plaintiff does not challenge the Commissioner's decision with respect to any alleged mental impairments. (Doc. 9).  Therefore, the Court will focus its review of the evidence on Plaintiff's exertional impairments.

Plaintiff had a long-term history of low back pain which did not respond to conservative treatment including physical therapy and multiple injections.  *See,* Tr. 164.

Plaintiff was hospitalized in September, 2004, and underwent a L4-5 discectomy, posterior lateral fusion, instrumentation and local autograft and allograft which orthopedic surgeon Dr. Amongero performed.  (Tr. 161-68).

Although Plaintiff initially improved post-operatively, Dr. Amongero subsequently noted that she reported bilateral leg pain and that she was getting little relief from pain medication. *See, e.g.,* Tr. 179.

Plaintiff had a series of nerve root blocks which Dr. Bertram performed and which did not provide Plaintiff with pain relief.  *See, e.g.,* Tr. 176.  In February, 2005, Dr. Amongero recommended that Plaintiff consult with pain specialist Dr. Smith.  (Tr. 169-71).  Dr. Smith reported that Plaintiff had no tenderness of the cervical thoracic spine, complained of diffuse pain of the lower back in the area of her surgical incision, sacroiliac and lumbar facet region pain radiating to both lower extremities, and that straight leg raising minimally aggravated pain in the lumbar back radiating to the lower extremities.  *Id.*  Dr. Smith identified Plaintiff's diagnoses as intractable back pain and lumbar radiculitis.  *Id.*

On March 17, 2005, examining psychologist Dr. Flexman reported that the results of his evaluation did not suggest that Plaintiff had any psychological factors that would create difficulties for her in terms of her pursuing a spinal cord stimulator implant.  (Tr. 187-90).

Plaintiff received treatment from pain specialist Dr. Gupta during the period April 28 through July 27, 2005.  (Tr. 222-48).  During this period of time, Plaintiff had physical therapy, aquatic therapy, and took prescribed medications.  *Id.*  However, Plaintiff reported that there was little change in her condition.  *Id.*

Plaintiff consulted with Dr. Pledger on May 6, 2005, who reported that Plaintiff used both hands to get out of the chair, she had an antalgic gait left and used a cane, her heel and toe walking were normal, she had tenderness to palpation over the spinous processes of L4 and L5, and that she had no muscle spasms.  (Tr. 290-93).  Dr. Pledger also reported that Plaintiff's seated straight leg raising was negative on the right and positive at the low back on the left,  her reflexes were absent in the ankle bilaterally, muscle strength was 5+ in both legs, and that sensation in her right leg was decreased at the first web space.  *Id.*  Dr. Pledger noted that Plaintiff's supine straight leg raising was negative on the right but positive at the low back on the left, her Lasegue's test was positive on the left, and that she had tenderness over the spinous processes of L4, L5 and over the lumbar paraspinal muscles bilaterally.  *Id.*  Dr. Pledger identified Plaintiff's diagnoses as status post TLIF L4-5, chronic regional pain syndrome lower extremities, and  reflex sympathetic dystrophy, lower.  *Id.*  Dr. Pledger recommended medications, a spinal cord stimulator, and sympathetic block injections.  *Id.*

Dr. Bertram performed two sympathetic block injections which he noted provided Plaintiff with only slight improvement in her pain.  *See,* Tr. 192, 195, 197.  Dr. Bertram reported on

5

June 8, 2005, that Plaintiff had diffuse right leg, foot, and ankle tenderness and that her pain behavior persisted during ambulation. (Tr. 194). Dr. Bertram also reported that Plaintiff complained that he had filled out a physical abilities assessment stating that she was capable of continuous sitting, lifting or carrying up to ten pounds, pushing/pulling up to twenty-five pounds, stair climbing, balancing, and kneeling, and that those activities would not be physically damaging if she used proper spine mechanics. *Id.* Dr. Bertram opined that Plaintiff was not a candidate for long-term disability from seated work. *Id.*

Plaintiff consulted with Dr. Seitzman in July, 2005, for implantation of a trial spinal cord stimulator. (Tr. 431). The following week, Dr. Seitzman noted that Plaintiff had reported she had very good relief of her leg pain but not of the pain above her buttocks area. (Tr. 427). Dr. Seitzman removed the trial stimulator and subsequently performed facet steroid injections which did not provide Plaintiff with lasting pain relief. (Tr. 416-24).

Dr. Pledger reported on September 8, 2005, that Plaintiff got out of the chair using both hands, her posture was flexed, gait pattern was antalgic on the left, heel and toe walking were weak bilaterally, and that her forward flexion was to her mid-thigh. (Tr. 271-72). Dr. Pledger also reported that Plaintiff had tenderness to palpation over the processes of L4, L5 and the sacrum, bilateral paraspinal muscles and left greater trochanter, and that she had no muscle spasm. *Id.* Dr. Pledger noted that Plaintiff's seated straight leg raises were negative, her reflexes were absent in the left ankle, and that sensation was increased. *Id.* Dr. Pledger identified Plaintiff's diagnosis as reflex sympathetic dystrophy, lower. *Id.* Dr. Pledger recommended a pain management program with referral for a trial pain pump. *Id.*

Dr. Seitzman implanted a pain pump on November 30, 2005, and infused the pump

6

with Dilaudid and Bupivacaine. (Tr. 261-62; 407). Plaintiff's back pain began to improve but she started to experience swelling in her ankles due to the Dilaudid. (Tr. 406). Dr. Seitzman changed the narcotic medication to morphine and on March 16, 2006, Dr. Seitzman noted that Plaintiff had two to three plus pitting edema three-quarters of the way up to her knee. (Tr. 394). In April, 2006, Dr. Seitzman reported that Plaintiff was not able to tolerate any narcotic pain medication because of the swelling. (Tr. 386). Dr. Seitzman also noted that Plaintiff reported that she did not get pain relief from other medications which Dr. Seitzman had pushed through the pump. *Id.* Dr. Seitzman recommended a spinal cord stimulator since Plaintiff had a fairly positive spinal cord stimulator trial in July, 2005. *Id.* Dr. Seitzman inserted a spinal cord stimulator on August 28, 2006, (Tr. 566).

On February 14, 2006, Dr. Pledger reported that he first treated Plaintiff on May 6, 2005, her diagnosis was reflex sympathetic dystrophy, she required frequent position changes every ten minutes, she had significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement of gait and station, and that she used a cane or crutch because she had balance problems and lower extremity weakness. (Tr. 265-68). Dr. Pledger also reported that Plaintiff's experience of pain was not severe enough to interfere with her attention and concentration. *Id.* Dr. Pledger noted that Plaintiff was able to occasionally lift/carry up to four pounds, she should never work at unprotected heights, around moving machinery, or in marked changes in temperature and humidity, should never drive automotive equipment, never be exposed to dust, fumes and gases, and that her experience of fatigue, weakness, or pain was sufficiently severe to interfere with attention and concentration. *Id.*

Plaintiff started receiving treatment from pain specialist Dr. Lichota in March, 2006. (Tr. 321-62). In July, 2006, Dr. Lichota reported that Plaintiff had a gait disturbance, reflex changes,

7

pain and tenderness to palpation, loss of sensation, muscle spasms, swelling and inflammation, and reduced ranges of motion. *Id.* Dr. Lichota identified Plaintiff's diagnoses as failed back surgery and lumbar radiculopathy. *Id.* Dr. Lichota reported further that Plaintiff was able to occasionally lift up to nineteen pounds, sit or stand for an hour each day, and that she needed an assistive device for ambulation. *Id.* Dr. Lichota noted that Plaintiff needed to change position every fifteen to twenty minutes and that her experience of pain was severe enough to constantly interfere with attention and concentration. *Id.*

A CT of Plaintiff's thoracic and lumbar spined performed on January 12, 2007, revealed no significant findings involving Plaintiff's thoracic spine, postoperative changes in the lumbar region, and no evidence of disc herniation or focal neural impingement. (Tr. 363).

Plaintiff began receiving pain management treatment from Dr. Saleh in January, 2007. In July, 2007, he reported that Plaintiff's diagnoses were status post lumbar laminectomy syndrome, lumbar radiculopathy, status post spinal cord stimulator/morphine pump implant, and that she had decreased reflexes, strength, and range of motion of the spine. (Tr. 467-71). Dr. Saleh also reported that Plaintiff was able to sit and stand/walk each for less than one hour, occasionally lift up to four pounds, was not able to bend, squat, crawl, climb, or lift above shoulder level, and that she was not able to push or pull over five pounds. *Id.* Dr. Saleh noted that Plaintiff would likely be absent from work more than three times a month due to her impairment, that her experiences of fatigue, weakness, or pain would frequently interfere with attention and concentration, and that she was required to take unscheduled breaks at will. *Id.* Dr. Saleh also noted that Plaintiff had a gait disturbance, reflex changes, pain and tenderness to palpation, loss of sensation, muscle spasms, and swelling/inflammation, that she required the use of an assistive device for ambulation due to balance

8

problems and lower extremity weakness. *Id.*

Examining physician Dr. Smith reported on December 7, 2007, that Plaintiff displayed a lot of pain behavior, movement of her shoulders caused pain in her back, walked very carefully and needed a cane for balance, had restricted ranges of motion of her hips and spine, that guarding against pain seemed to be the cause of muscle weaknesses, and that pinprick was decreased over the left thigh and anterior leg. (Tr. 472-84). Dr. Smith also reported that Plaintiff's diagnoses were post-op laminectomy and fusion L4-5 with chronic pain, status post pain pump and spinal cord stimulator, thoracic, benign essential hypertension, and chronic depression. *Id.* Dr. Smith noted that although Plaintiff had a pain pump and spinal cord stimulator, she continued to have disabling pain in her back and both legs, she was not able to lift or carry any weight, was able to sit and stand each for ten to fifteen minutes at one time and for two hours in an eight-hour workday, and walk for ten minutes at one time and for two hours in an eight-hour workday, and that she required the use of a cane and was able to walk for less than a block without a cane. *Id.*

Dr. Seitzman reported on March 31, 2008, that Plaintiff's diagnoses were post-laminectomy syndrome, lumbar radiculopathy, spondylosis, and facet syndrome, that she required frequent changes in position, and that she was not able to lift/carry any weight and sit or stand for over ten to fifteen minutes. (Tr. 505-08). Dr. Seitzman also reported that due to her impairment, Plaintiff would be absent from work three or more times a month, that her experience of pain was sufficiently severe enough to frequently interfere with her concentration and attention, and that she would need to take frequent unscheduled breaks during an eight-hour workday. *Id.*

A medical advisor (MA) testified at the hearing that, "... I've been listening to this lady and I know I'm supposed to base[ ] everything on objective findings, but anybody who's had

9

this much treatment for this length of time, I'd consider very strongly that she indeed is having this type of pain." (Tr. 605-14). The MA testified further that Plaintiff did not meet Listing 1.04 but that she would equal it in severity, that, "if she has had all these medications and a pain pump and a spinal cord stimulator, something's going on for sure but ... there's no test". *Id.* The MA also testified that assuming Plaintiff did not equal any Listing, she was able to perform no more than sedentary work, lift ten pounds occasionally and five pounds frequently, stand and walk for two hours in an eight-hour day, sit for six hours in an eight-hour day, would need a sit/stand option with being allowed to stand up for up to five minutes out of every hour. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by failing to find that she satisfies Listing 1.04 and by finding that she is capable of performing a limited range of sedentary work. (Doc. 9). The Court will first address Plaintiff's second Error.

Plaintiff argues that the Commissioner erred by finding that she is capable of performing a limited range of sedentary work. Essentially, Plaintiff's position is that her treating physicians have opined that she is not capable of performing even a limited range of sedentary work, their opinions are supported by their clinical findings, are consistent with other evidence, and that the only evidence that opposes their opinions are the opinions of the reviewing physicians.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to
> provide a detailed, longitudinal picture of [the claimant's] medical

10

> impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544.  "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'"  *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to

---

FN 1.  Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Plaintiff's treating physicians' opinions, Judge Padilla essentially determined that they were not supported by objective findings and that they were inconsistent with other evidence of record. *See,* Tr. 28-29. This Court disagrees.

First, the Court notes that not one of Plaintiff's treating physicians has ever

questioned her allegations of disabling pain.  Nevertheless, Drs. Pledger, Seitzman, Lichota, and Saleh have all essentially reported that Plaintiff's residual functional capacity is inconsistent with the ability to perform substantial gainful activity.  Those opinions are consistent with the objective clinical findings of record including an antalgic gate, restricted ranges of motion, tenderness to palpation, positive straight leg raising, absent reflexes, reflex changes, decreased sensation, loss of sensation, and the medical necessity of using an assistive device for ambulation due to balance problems and lower extremity weakness.

Plaintiff's treating physicians' opinions are consistent with examining physician Dr. Smith's findings and conclusions.  For example, Dr. Smith noted that Plaintiff needed to use a cane, had restricted ranges of motion, was unable to lift or carry any weight, was able to sit and stand for ten to fifteen minutes at one time and for a maximum of two hours in an eight hour day.

While treating physician Dr. Bertran opined that Plaintiff was not disabled from seated work, Dr. Bertram offered that opinion before Plaintiff began receiving treatment from her other physicians and prior to the insertion and subsequent failure of the pain pump.

Because Plaintiff's treating physicians opinions are supported by the objective clinical evidence, the Commissioner's erred by rejecting those opinions as to Plaintiff's residual functional capacity.  Accordingly, the Commissioner's opinion that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. §405(g).  If a court determines that

substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolved and that the record adequately establishes Plaintiff's entitlement to benefits. Specifically, as noted above, Plaintiff's treating physicians Drs. Pledger, Seitzman, Lichota, and Saleh have essentially opined that Plaintiff's residual functional capacity is inconsistent with the ability to perform substantial gainful activity and their opinions are supported by the objective evidence of record. In addition, the Court notes that none of Plaintiff's physicians have questioned Plaintiff's allegations of disabling pain and that the MA essentially testified that Plaintiff's allegations of disabling pain are supported by the record.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed. It is also recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

December 30, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

J:\Social Security - Drafts\Hahn_SSD.wpd

14

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).